## RICHARDSON v. UNITED EMPLOYERS CASUALTY CO.
### No. 3835.

Court of Civil Appeals of Texas. Beaumont. March 28, 1941.

Rehearing Denied April 9, 1941.

Chas. S. Pipkin and J. R. McDougald, both of Beaumont, for appellant.

Will R. Saunders, of Dallas, for appellee.

O'QUINN, Justice.

This is a compensation insurance case. Ernest L. Mays was the employer, appellant, Elton Richardson, the employee, and appellee, United Employers Casualty Company, the compensation insurance carrier. On August 10, 1939, while in the course of his employment as an employee of Ernest L. Mays, appellant received accidental injuries for which he claimed compensation. He duly filed with the Industrial Accident Board his claim for total and permanent incapacity, caused by his said injuries, which duly made its final award. Appellant duly gave notice that he would not abide said award, and filed this suit in the district court of Hardin County, Texas, to set said award aside, and to recover compensation as for total and permanent disability.

Appellee, defendant, answered by general demurrer and general denial.

The case was tried to a jury upon special issues, and judgment rendered for appellant in the sum of $1,400, being for the loss of the use of an arm, at the rate of $7 per week, less a credit of $345.60 theretofore paid appellant by appellee, being for 36 weeks at the rate of $9.60 per week, leaving the sum of $1,054.40 to be paid under the judgment. From that judgment appellant brings this appeal.

We find the record, particularly the answers of the jury to the special issues, in a very confused, inconsistent and unsatisfactory condition. By reason of this the judgment, to our minds, not reflecting an understanding of the special issues, by the jury, and showing inconsistent findings by the jury, we think the judgment should be reversed and remanded for another trial.

■ In answer to special issue 8, the jury found that appellant had sustained incapacity to work. In answer to special issue 9, they found that he had not suffered "any total incapacity to work." To special issue 10, they answered that appellant's "total incapacity to work" began August 10, 1939; and to special issue 11 they answered that the "total incapacity of appellant" would continue "throughout his natural life." These findings (10, 11) are in conflict with the finding in answer to special issue 9 where they answered that appellant had not suffered "any total incapacity." The one destroyed the other.

■ Special issue 21, as submitted, read: "Do you find from a preponderance of the evidence that plaintiff's incapacity, if any, is not confined solely to a total loss of the use of the left arm?"

"In the event your answer to the foregoing issue is in the affirmative, the form of your answer should be: 'It is not confined solely to a total loss of the use of the left arm'; otherwise the answer should be 'No.'" The jury answered: "No."

By this answer, under special instruction of the court, the jury found that the *incapacity of the plaintiff was confined solely to the total loss of the use of the left arm.* If appellant's incapacity was confined *solely* to the loss of the use of the left arm, then he did not suffer total incapacity as found in answer to issues 10 and 11, and so the answer to issue 21 was in conflict with the findings in said issues. Also, in answer to issue 23, affirmatively and correctly submitted, the jury found that the injury of appellant had resulted in the total loss of the use of his left arm. This finding was in harmony with the finding answering issue 21 mentioned supra, but was in conflict with the answer to issues 10 and 11 that appellant, by reason of his injuries, was totally and permanently incapacitated to work.

■ In answer to issue 19, the jury found that the average weekly wage of appellant was $9.60. It is without dispute that appellant was working for a daily wage of $3.20 per day, and that he worked six days per week. That would be $19.20

he received each week. He had not worked for substantially a whole year immediately before his accident, and there was no proof of another worker who had worked for substantially the whole of the year immediately preceding the accident, and so the issue as to his average weekly wage was submitted under sub-section 3 of Article 8309, Vernon's Annotated Texas Statutes, as follows: (Special Issue 19) "From a preponderance of the evidence what sum of money, if any, do you find would be an average weekly wage for Elton Richardson, under all the facts and circumstances obtaining in this case, which would be just and fair to the plaintiff and the defendant?" The jury answered "$9.-60." The pleadings and the evidence raised the issue. As before stated, at the time appellant was injured he was receiving $3.20 per day and was working six days per week. That was $19.20 for each week he worked. Appellee had paid him compensation for 36 weeks at the rate of $9.60 per week. It certainly can be said or presumed that appellee made full investigation of all the facts pertaining to the matter before making these payments, and because of its knowledge of the facts, made the payments. If $9.60 was sixty per cent of appellant's weekly earnings, then one hundred per cent, or all of his earnings would be $16. This evidently was ascertained by appellee and made the basis of its compensation weekly payments. Taking this as a fact, and there is nothing in the record to deny it, the jury's finding of his average weekly wage as a basis of computing his weekly compensation was manifest error, or evidenced confusion in the minds of the jury, they probably thinking that the $9.60 paid by appellee was the weekly wage instead of the weekly compensation rate. Appellee pleaded neither fraud nor mistake against its weekly compensation rate paid to appellant, but admits that if plaintiff had plead that rate and asserted estoppel against appellee's denying same, it would be bound. We think we should consider all of the facts that tend to show mistake and confusion on the part of the jury in arriving at their answer to the issue.

In his motion for a new trial, appellant alleged that the jury became confused as to the matter of his average weekly wage, upon which to base the weekly compensa-tion, and because appellee had paid him $9.60 per week compensation thought that was his weekly wage and so found. We find in the record the testimony of three of the jurors who tried the case, touching upon the question of the jury's finding of the weekly wage of appellant which tends to support appellant's allegation relating to confusion and mistake by the jury in passing upon the weekly wage question. We think it should be deduced from the record that the jury, in considering the question of average weekly wage of appellant, became confused and answered a sum not intended, and which was without support in the evidence.

Assignments presenting others are urged, but as they need not arise on another trial, they will not be discussed.

Because of the inconsistent answers of the jury to issues discussed, supra, and the apparent confusion of the jury in answering the issue as to appellant's average weekly wage from which his weekly compensation rate should be found, the judgment is reversed and the cause remanded for another trial.